# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | Case No. 1:15CR00034-001 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **JOSHUA ROBERT BERRY,** | ) | By:  James P. Jones |
| | ) | United States District Judge |
| Defendant. | ) | |

*Anthony P. Giorno, Assistant United States Attorney, Roanoke, Virginia, for United States; Michael A. Bragg, BRAGG LAW PLC, Abingdon, Virginia, for Defendant.*

The defendant, Joshua Robert Berry, filed a motion seeking relief under 28 U.S.C. § 2255.  The United States filed a response in opposition to the § 2255 motion, the defendant filed a reply, and the motion is now ripe for disposition.  For the reasons stated, I will deny the § 2255 motion.

## I.

After pleading guilty, the defendant was sentenced by this court on November 15, 2016, to a total term of 734 months imprisonment, consisting of 240 months each on Counts Three, Five, and Nine of the Indictment, to be served concurrently, to be followed by a term of 84 months on Count Four and a term of 410 months on Count Eleven, each to be served consecutively.  Counts Three and Five both charged the defendant with affecting commerce by robbery and threatening physical violence in

furtherance of a plan to affect commerce (Hobbs Act robbery), in violation of 18 U.S.C. §§ 2 and 1951. Count Four charged the defendant with using or possessing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. §§ 2 and 924(c). Count Nine charged the defendant with conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951. Count Eleven charged him with causing the death of a person through the use of a firearm in the furtherance of that conspiracy, that killing being considered murder as defined in 18 U.S.C. § 1111, in violation of 18 U.S.C. §§ 2 and 924(j). Berry did not appeal his convictions or sentences.

In his § 2255 motion, the defendant asserts three grounds of ineffective assistance of counsel. In Ground One, he contends that his counsel was ineffective in failing to challenge the application of *Johnson v. United States*, 135 S. Ct. 2551 (2015), to Count Eleven, because the predicate offense of conspiracy to commit Hobbs Act robbery does not qualify as a crime of violence under 18 U.S.C. § 924(c). In Ground Two, he asserts his counsel was ineffective in failing to argue improper venue because the conduct at issue in Counts Nine and Eleven took place in North Carolina and not Virginia. In Ground Three, Berry contends that his counsel was ineffective in failing to challenge the court's application of U.S. Sentencing Guidelines Manual ("USSG") § 2A1.1 (First Degree Murder) rather than USSG § 2A1.2 (Second Degree Murder).

II.

To state a viable claim for relief under § 2255, a defendant must prove: (1) that his sentence was "imposed in violation of the Constitution or laws of the United States"; (2) that "the court was without jurisdiction to impose such sentence"; or (3) that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). The movant bears the burden of proving grounds for a collateral attack by a preponderance of the evidence. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958).

Criminal defendants have a Sixth Amendment right to effective legal assistance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Ineffective assistance claims, however, are not lightly granted — "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id.* at 686. To that end, a defendant must satisfy a two-prong analysis showing both that counsel's performance fell below an objective standard of reasonableness and that the defendant was prejudiced by counsel's alleged deficient performance. *Id.* at 687. To satisfy the prejudice prong of *Strickland*, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different. *Id.* at 694.

A defendant who has pled guilty must demonstrate that, but for counsel's alleged error, there is a reasonable probability that he would not have pled guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In the guilty plea context, a petitioner must also "convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 371–72 (2010).

### A. Ground One.

Count Eleven, which charged a violation of 18 U.S.C. § 924(j), relied upon the definition of "crime of violence" set forth in § 924(c). That section defines "crime of violence" as any felony that:

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). Paragraph (A) is known as the "elements" or "force" clause, and paragraph (B) is known as the "residual" or "risk of force" clause.

In *Johnson v. United States*, 135 S. Ct. 2551 (2015), the Supreme Court held that the residual clause of the "crime of violence" definition in the Armed Career Criminal Act ("ACCA") was unconstitutionally vague. In *United States v. Davis*,

139 S. Ct. 2319 (2019), the Court applied the same reasoning to invalidate the "risk of force" clause of § 924(c)'s definition of crime of violence. Following *Davis*, an offense can only serve as a valid predicate for a § 924(c) conviction if it satisfies the elements clause, § 924(c)(3)(A).

The predicate "crime of violence" underlying Count Eleven was conspiracy to commit Hobbs Act robbery. Before the Supreme Court issued its decision in *Davis*, the Fourth Circuit ruled that conspiracy to commit Hobbs Act robbery does not qualify as a crime of violence under the elements clause. *United States v. Simms*, 914 F.3d 229, 233-34 (4th Cir. 2019). "This is so because to convict a defendant of this offense, the Government must prove only that the defendant agreed with another to commit actions that, if realized, would violate the Hobbs Act. Such an agreement does not invariably require the actual, attempted, or threatened use of physical force." *Id.* Therefore, conspiracy to commit Hobbs Act robbery could qualify as a valid predicate only under the risk of force clause. In *Davis*, the Supreme Court affirmed the Fifth Circuit's holding that conspiracy to commit Hobbs Act robbery could no longer serve as a valid predicate offense for a § 924(c) conviction because the risk of force clause is unconstitutionally vague. 139 S. Ct. at 2325, 2335.

The government concedes that in the wake of *Davis*, Berry is actually innocent of Count Eleven, which incorporates § 924(c). His predicate offense of conspiracy

to commit Hobbs Act robbery is no longer a valid predicate offense for a § 924(c) conviction.

However, relying on *Bousley v. United States*, 523 U.S. 614, 624 (1998), the government argues that Berry is not entitled to relief because he cannot prove that he is actually innocent of other equally serious charges that the government dismissed in exchange for his guilty plea, nor can he prove that he is actually innocent of a foregone state capital murder charge in North Carolina. These arguments necessitate a closer look at the facts and procedural history of the case.

In April and May 2012, Berry, his wife Sarah Berry, and a third codefendant named Emmanuel Foster, committed a series of armed robberies of convenience stores and movie theaters near Interstate 77 in Virginia, West Virginia, and North Carolina. Berry actively planned and participated in each of the robberies, entering the stores and theaters, threatening personnel, demanding money, and carrying a firearm. On May 25, 2012, the three robbed a convenience store in Mount Airy, North Carolina. In the course of that robbery, Foster shot and killed the store's owner, Donald Claude Arnder, with a pistol supplied by Sarah Berry.

In exchange for Berry's plea of guilty to Counts Three, Four, Five, Nine, and Eleven, the government agreed to dismiss Counts One, Two, Six, Seven, Eight, and Ten of the Indictment. Counts One and Seven each charged Berry with affecting interstate commerce by robbery and threatening physical violence in furtherance of

- 6 -

a plan to affect commerce, in violation of 18 U.S.C. § 1951 (Hobbs Act robbery). Counts Two, Six, Eight, and Ten charged him with brandishing a firearm in furtherance of a crime of violence in violation of § 924(c). Each of the dismissed § 924(c) counts carried a mandatory minimum sentence of 25 years imprisonment, to be served consecutively.[1]

---

[1] The version of the statute in effect at the time of Berry's crimes and sentencing read, in relevant part,

"In the case of a *second or subsequent conviction under this subsection*, the person shall —

(i) be sentenced to a term of imprisonment of not less than 25 years . . . ."

18 U.S.C. § 924(c)(1)(C) (2006) (emphasis added). In *Deal v. United States*, 508 U.S. 129 (1993), the Supreme Court construed this language to mean that where a defendant was convicted of multiple § 924(c) charges in the same case or proceeding, the mandatory minimum sentence would apply to all but one of those charges.

Effective December 21, 2018, as part of the First Step Act, Congress changed the statutory language to read,

"In the case of a *violation of this subsection that occurs after a prior conviction under this subsection has become final*, the person shall —

(i) be sentenced to a term of imprisonment of not less than 25 years . . . ."

18 U.S.C. § 924(c)(1)(C) (2018) (emphasis added). Thus, "going forward, only a second § 924(c) violation committed 'after a prior [§ 924(c)] conviction . . . has become final' will trigger the 25-year minimum." *Davis*, 139 S. Ct. at 2324 n.1 (quoting First Step Act of 2018, Pub. L. No. 115-391, § 403(a), 132 Stat. 5194, 5221 (Dec. 21, 2018)). This revision in the statute applies only where a defendant's sentence was not yet imposed as of the date of the legislative enactment; in other words, it is not retroactive. First Step Act of 2018 § 403(b), Pub. L. No. 115-391, 132 Stat 5194, 5222 (Dec. 21, 2018) (amendment "shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment"). Because Berry was sentenced before the effective date of the First Step Act of 2018, his sentences are governed by the prior statutory language and case law interpreting it.

As a result of the robbery in Mount Airy and the killing of Arnder, Berry and his confederates were indicted by a North Carolina grand jury for capital murder, attempted robbery with a dangerous weapon, and conspiracy to commit robbery with a dangerous weapon.  Two weeks prior to their indictment in this federal case, the State of North Carolina gave notice that it would seek the death penalty as to all three defendants.

Assistant Federal Public Defenders Frederick T. Heblich, Jr. and Nancy C. Dickenson-Vicars represented Berry in this case.  David Botchin represented Berry in relation to the North Carolina charges.  The government has submitted an affidavit of Heblich in opposition to Berry's § 2255 motion.  Heblich declares that he and Dickenson-Vicars were in close communication with Botchin regarding the potential outcomes of the two cases.  Heblich further states,

> I discussed with Berry the potential implications of the *Johnson* decision and advised Berry not to raise it as a defense for several reasons. One reason was that in counsel's opinion the argument that Hobbs Act Robbery was not a crime of violence under § 924(c) was likely to fail. Another, and more important reason, was that if the argument succeeded and resulted in a lesser sentence, there was the real possibility that the capital case in North Carolina would be prosecuted and expose Berry to a possible death sentence.

Resp. to Mot. to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255

Ex. 2, Heblich Aff. ¶ 14, ECF No. 159-2.[2]  Moreover, "[d]uring plea discussions with the government, the *Johnson* issue was discussed.  The government's position was that if Berry wanted to litigate *Johnson* issues, the plea agreement would be considered to be rejected and would be withdrawn." *Id.* ¶ 19.

The North Carolina state charges were held in abeyance pending the resolution of the charges in this federal case.  After Berry and his codefendants were sentenced in this case, the State of North Carolina voluntarily dismissed the state charges against them.

In opposition to Berry's § 2255 motion, the government submitted an affidavit of Ricky Bowman, the district attorney who prosecuted the North Carolina case against Berry and his codefendants.  Bowman declares that "[t]he convictions and the significant length of the federal sentences received by the defendants was a material factor and the DETERMINATIVE FACTOR in the State of North Carolina's decision not to pursue charges involving the murder of Donald Claude Arnder." *Id.* at  Ex. 1 at 3, ECF No. 159-1.  "Had the State known the sentences received by the 3 defendants could have been later reduced or shortened, the State would not have dismissed its charges." *Id.* at 4.

---

[2]  Heblich notes that he "does not recall discussing with Berry the possible application of *Johnson* to the predicate offense of conspiracy to commit Hobbs Act Robbery as distinct from the commission of Hobbs Act Robbery."  Heblich Aff. ¶ 15.

I addressed the potential *Johnson*-based argument with Berry and his counsel on the record before I sentenced him.  Sent. Hr'g Tr. 2–4, ECF No. 111.  There is no question that both he and his counsel were aware of the possibility that the Supreme Court might extend its *Johnson* reasoning to § 924(c), although that outcome was uncertain at the time of Berry's guilty plea and sentencing.   After I explained the *Johnson* decision to Berry, Heblich stated that Berry had been "fully advised on that issue, and agrees with our recommendation to him not to litigate that issue, and to proceed conceding that the 924(c) and the 924(j) convictions are properly based on Hobbs Act robbery."  *Id.* at 4.  I asked Berry whether what his attorney said was correct, and he replied, "Yes, sir."  *Id.*

Under the circumstances of this case, counsel's decision to advise Berry to plead guilty to Count Eleven cannot be considered an unprofessional error under *Strickland*, nor can Berry show that he was prejudiced by that decision.  Had Berry rejected the government's plea offer on *Johnson* grounds, the government likely would have pursued the dismissed Counts One, Two, Six, Seven, Eight, and Ten.  Counts One and Seven were Hobbs Act robbery charges that each carried maximum penalties of 40 years imprisonment.  Counts Two, Six, and Eight were § 924(c) charges for which the predicate offenses were Hobbs Act robbery rather than conspiracy to commit Hobbs Act robbery, and each carried a mandatory minimum

sentence of 25 years to run consecutively with any other sentence.[3]   Unlike conspiracy to commit Hobbs Act robbery, Hobbs Act robbery itself remains a viable predicate offense for a § 924(c) conviction under the force clause.  *United States v. Mathis*, 932 F.3d 242, 266 (4th Cir. 2019).

The pursuit of three more § 924(c) counts against Berry could have resulted in at least another 75 years of imprisonment to be served consecutively to his sentences on any other counts.  Counsel was also keenly aware that if Berry did not receive a sufficiently lengthy sentence in this case to satisfy the North Carolina prosecutors, the State in all likelihood would not have dismissed the pending capital murder charge and would have pursued a death sentence or a sentence of life imprisonment.  The outcome achieved by Berry's counsel in this case was frankly the best outcome for which he could have hoped.  Given these facts, Berry has failed to meet his burden under *Strickland*.

Additionally, Berry has defaulted his claim by not raising it on direct appeal. In order to excuse this default, he must either show cause and prejudice or that he is actually innocent.  *Bousley*, 523 U.S. at 622.  Both parties agree that he is actually innocent of Count Eleven, but the Court in *Bousley* instructed that "where the Government has forgone more serious charges in the course of plea bargaining,

---

[3] Count Ten, another § 924(c) charge which the government dismissed, would also be invalid following *Davis* because it, like Count Eleven, was based on a predicate offense of conspiracy to commit Hobbs Act robbery.

petitioner's showing of actual innocence must also extend to those charges." *Id.* at 624.

In the years since the *Bousley* decision was issued, several circuit courts have concluded that a petitioner must demonstrate his innocence not only of foregone charges that are *more* serious than the invalidated charge, but also of those that are *equally* serious. *See, e.g.*, *United States v. Caso*, 723 F.3d 215, 221–22 (D.C. Cir. 2013) (noting that the foregone charges at issue in *Bousley* were, in fact, as serious as the challenged offense rather than more serious); *Lewis v. Peterson*, 329 F.3d 934, 937 (7th Cir. 2003) (reasoning that not requiring a defendant to prove his innocence of equally serious foregone charges would result in a windfall to the defendant). *See also United States v. Scruggs*, 714 F.3d 258, 266–67 (5th Cir. 2013) (assessing "'seriousness' by cumulating the statutory maximums for all of the forgone counts and all of the pleaded counts to determine the petitioner's 'maximum exposure' before and after the plea, not by comparing the highest single maximum sentence on each side").

While the Fourth Circuit has not yet considered this exact issue, it has interpreted *Bousley*'s requirement that a petitioner demonstrate his actual innocence of foregone charges. The Fourth Circuit has held that "a defendant making a claim of actual innocence after a negotiated guilty plea must show that he is factually innocent of the underlying criminal conduct," but not that "he is actually innocent

of other, dissimilar charged conduct." *United States v. Adams*, 814 F.3d 178, 184 (4th Cir. 2016).   It thus appears that the Fourth Circuit has limited *Bousley*'s requirement to foregone charges pertaining to the same instance of underlying criminal conduct, such as where the crime of conviction was a lesser included offense of a dismissed charge.   *See id.* (explaining that a defendant charged with second degree murder who pleads guilty to voluntary manslaughter would have to show his actual innocence of both voluntary manslaughter and second degree murder in order to successfully attack his guilty plea).

The criminal conduct underlying Count Eleven was not a single Hobbs Act robbery, but rather a conspiracy to commit Hobbs Act robbery.   The conspiracy encompassed not only the Mount Airy robbery, but also the other robberies committed in Virginia and West Virginia.   Count Eleven reads:

> 1.  On or about and between April 1, 2012, and May 25, 2012 in the Western District of Virginia and elsewhere, JOSHUA ROBERT BERRY, SARAH LYNN BERRY, and EMMAUNEL [sic] WILLIAM FOSTER, as principals and aiders and abettors, in the commission of a violation of 18 U.S.C. § 924(c), as charged in Count Ten of the Indictment, caused the death of a person through the use of a firearm and that killing being considered murder, as defined in 18 U.S.C. § 1111.

Indictment 5, ECF No. 4.  Count Ten, in turn, reads:

> 1.  On or about and between April 1, 2012, and May 25, 2012 in the Western District of Virginia and elsewhere, JOSHUA ROBERT BERRY, SARAH LYNN BERRY, and EMMAUNEL [sic] WILLIAM FOSTER, as principals and aiders and abettors, knowingly used and carried during and in relation to, and possessed in furtherance of, a

crime of violence for which they may be prosecuted in a court of the United States (namely, conspiracy to interfere with commerce by threats and violence, as charged in Count Nine), a firearm.

2. The firearm was discharged.

*Id.* The relevant foregone charges are therefore not only those charges based on the Mount Airy, North Carolina, robbery, but any foregone charges based on the conspiracy to commit Hobbs Act robbery, provided those charges are more serious than, or perhaps as serious as, the offense charged in Count Eleven, which is essentially felony murder.

The North Carolina capital murder charge is more serious than the offense to which Berry pled guilty in Count Eleven. This is so because by the time of his initial appearance in this court, the government had already decided not to pursue the death penalty in this case, although that remedy would have been available to it. The State of North Carolina, on the other hand, had already notified Berry that it would seek the death penalty on the state murder charge. It cannot seriously be disputed that a maximum penalty of death is more serious than a maximum penalty of a term of years of imprisonment, even if that term of years amounts to a life sentence.

The State of North Carolina is, of course, a separate sovereign from the United States. The decision to dismiss the state capital murder charge was not made by the United States. Nevertheless, the record demonstrates that state and federal prosecutors worked closely together on the two cases, coordinating their efforts.

- 14 -

Berry's defense attorneys also saw the two cases as intricately connected and worked to together to achieve a favorable outcome in both cases. It is undisputed that the State of North Carolina would not have dismissed its capital murder charge against Berry had he not been convicted of Count Eleven in this court and received what the State considered to be an appropriately lengthy sentence for the killing of Arnder. To relieve Berry of the obligation to prove his actual innocence of the North Carolina capital murder charge would result in an unjust windfall to him. In light of the facts he admitted in his plea agreement and under oath at his guilty plea hearing, Berry has not and could not prove that he is actually innocent of the dismissed North Carolina capital murder charge.

Even if *Bousley*'s requirement extends only to foregone federal charges, I find that the uncharged federal offenses that Berry escaped in exchange for his guilty plea to Count Eleven are as serious as the offense charged in Count Eleven. These foregone § 924(c) charges with predicate offenses of Hobbs Act robbery are based on the same criminal conduct underlying the conspiracy charge that forms the basis of Count Eleven — the spree of armed robberies committed by Berry and his codefendants in April and May of 2012.

Because the government chose not to seek the death penalty in this case, Count Eleven carried a maximum penalty of a term of years up to life imprisonment and a mandatory minimum sentence of 25 years. Counts One and Seven of the Indictment,

which were dismissed following Berry's guilty plea, each carried a maximum penalty of up to 40 years imprisonment. This maximum sentence cannot be considered equivalent to a life sentence given Berry's young age. But the three additional § 924(c) charges that were dismissed would each have had a maximum penalty of life imprisonment and a mandatory minimum sentence of 25 years, each of which would have been served consecutively to any other sentence.

The dismissed § 924(c) offenses are as serious as Count Eleven because they have the same mandatory minimum sentences and the same maximum sentences. I am persuaded by the reasoning of courts such as *Caso*, 723 F.3d 215, and *Lewis*, 329 F.3d 934, and conclude that in order to obtain relief, Berry must prove his actual innocence of the equally serious dismissed § 924(c) charges, which were based on the same underlying criminal conduct as Count Eleven. Any other conclusion would hand Berry an unjust windfall.

Berry does not claim that he is actually innocent of the dismissed § 924(c) convictions, nor could he. He admitted his significant involvement in these robberies, including his brandishment of a firearm, in both his plea agreement and under oath at his guilty plea hearing. As noted above, Hobbs Act robbery qualifies as a crime of violence under § 924(c)'s force clause, which has not been invalidated. *Mathis*, 932 F.3d at 266. Because he cannot prove he is actually innocent of these equally serious foregone offenses, nor has he established cause and prejudice to

excuse his procedural default of this claim, Berry is not entitled to relief on Count One.

### B. Ground Two.

In Ground Two, Berry contends that his counsel was ineffective in failing to object to venue in Virginia with respect to Counts Nine and Eleven, when the robbery and use of the firearm at issue in those counts took place in North Carolina. This ground is plainly meritless. As noted above, the charges in Counts Nine and Eleven were based on the conspiracy to commit a series of armed robberies throughout Virginia, West Virginia, and North Carolina. "[A]ny offense against the United States begun in one district and completed in another, or committed in more than one district, may be . . . prosecuted in any district in which such offense was begun, continued or completed." 18 U.S.C. § 3237(a). *See also United States v. Camara*, 908 F.3d 41, 48 (4th Cir. 2018) (Venue in a conspiracy case is proper in any district in which any act in furtherance of the conspiracy took place.). Counsel's decision not to object to venue in Virginia was not an unprofessional error under *Strickland*, Berry was not prejudiced by that decision, and Berry is not entitled to relief on Ground Two.

### C. Ground Three.

In Ground Three, Berry contends that his counsel was ineffective in failing to challenge the court's application of USSG § 2A1.1 (First Degree Murder) rather than

USSG § 2A1.2 (Second Degree Murder).  First, this claim is procedurally barred because Berry failed to raise it on direct appeal and has not attempted to show any cause for his failure to do so.  Even if he had not defaulted this claim, however, Berry would not be entitled to relief on this ground.

Berry cannot show that his counsel committed an unprofessional error under *Strickland* or that he suffered any prejudice because the killing of Arnder did in fact meet the statutory definition of first degree murder.  18 U.S.C. § 1111, which is incorporated into the § 924(j) offense charged in Count Eleven, states that "[e]very murder . . . committed in the perpetration of, or attempt to perpetrate, any . . . robbery . . . is murder in the first degree."  Furthermore, contrary to Berry's claim, his counsel raised this issue at sentencing.  Sent. Hr'g Tr. 13–14, ECF No. 111.  Berry therefore cannot meet his burden under *Strickland* as to Ground Three.

### III.

For these reasons, the § 2255 motion will be denied.  A separate final order will be entered.

DATED:  April 15, 2020

/s/  JAMES P. JONES
United States District Judge

- 18 -